DETROIT CLUB *v.* STATE OF MICHIGAN.
DETROIT ATHLETIC CLUB *v.* LIQUOR CONTROL
COMMISSION.

1. STATUTES—CONSTRUCTION.
   Judicial construction of a statute which speaks plainly is not permitted.

2. SAME—CONSTRUCTION OF SUBSEQUENT AMENDATORY ACT.
   In considering an amendatory act which in part contains the same language as that of a former amendatory act amending the same section, a court is confined to the act as it stands after the later amendment.

3. INTOXICATING LIQUOR — DISCOUNT — CLAIMS AGAINST STATE — LIMITATION OF ACTIONS.
   Claims for discount for purchases of liquor from the liquor control commission, which were timely presented in the court of claims, were properly allowed (Act No. 8, § 16, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937; Act No. 135, § 11a, Pub. Acts 1939, as added by Act No. 137, Pub. Acts 1941, and amended by Act No. 237, Pub. Acts 1943).

4. STATUTES—AMENDMENT—IMPLIED REPEAL.
   An amendatory act has a repealing force, by the mechanics of legislation, different from that of an independent statute; repugnancy not being essential element of implied repeal of specifically amended sections.

5. SAME—AMENDMENT.
   Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there, the provisions carried over having their force from the new act, and not from the former.

6. SAME—AMENDMENT OF SPECIFIC SECTION—EFFECT.

  The effect of an act amending a specific section of a former act, in the absence of a saving clause, is to strike the former section from the law, obliterate it entirely, and substitute the new section in its place.

7. SAME—CONSTRUCTION—LEGISLATIVE KNOWLEDGE PRESUMED.

  The legislature is presumed to know acknowledged and long-established rules of construction of statutes.

8. SAME—COURT MUST NOT DEPART FROM EXPLICIT DECLARATION OF LEGISLATURE.

  Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it.

NORTH, C. J., and STARR and BUTZEL, JJ., dissenting.

Appeal from Court of Claims; O'Hara (Chester P.), J., presiding. Submitted June 14, 1944. (Docket Nos. 42, 43, Calendar Nos. 42,714, 42,715.) Decided October 11, 1944.

Separate claims by Detroit Club and Detroit Athletic Club against State of Michigan and Liquor Control Commission for discounts on purchase of liquor. Judgments for plaintiffs. Defendants appeal. Affirmed.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Selden S. Dickinson* and *John G. Garlinghouse,* of counsel), for Detroit Club.

*David H. Crowley, George A. Kelly* and *Walter E. Kelly* (*Stanley E. Beattie,* of counsel), for Detroit Athletic Club.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Meredith H.*

*Doyle* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

NORTH, C. J. (*dissenting*). This is an appeal by defendants from a judgment granted to the respective plaintiffs by the court of claims of the State of Michigan. Although each of the plaintiffs filed separate suits and the factual situation as to dates and amounts differs, yet the questions of law involved are identical, and the cases on appeal are consolidated.

Each plaintiff is a Michigan corporation properly licensed to sell certain alcoholic liquors for consumption on the premises, under the provisions of the liquor control act (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended*). Prior to November 25, 1942, both plaintiffs had purchased large quantities of liquors from the defendant liquor control commission but had been refused a 15 per cent. discount on such purchases. On that date, this Court granted to plaintiff Detroit Athletic Club a writ of mandamus compelling the liquor control commission to grant the discount on all such purchases, under Act No. 8, § 16, Pub. Acts 1933 (Ex. Sess.), as amended† (Comp. Laws Supp. 1940, § 9209–31, Stat. Ann. 1943 Cum. Supp. § 18.987). See *Detroit Athletic Club* v. *Liquor Control Commission,* 303 Mich. 444.

The present actions are to recover from the State discounts which the State withheld from the plaintiffs during three years prior to the filing of the respective claims, March 1, 1943, for the Detroit Club, and February 23, 1943, for the Detroit Athletic Club. This period is within the general limitation of Act No. 135, Pub. Acts 1939, as amended by

---

* See Comp. Laws Supp. 1940, 1943, § 9209–16 *et seq.*, Stat. Ann. and Stat. Ann. 1943 Cum. Supp. § 18.971 *et seq.*—REPORTER.

† By Act No. 281, Pub. Acts 1937.—REPORTER.

Act No. 137, Pub. Acts 1941 (Comp. Laws Supp. 1940, 1942, § 13862–1 *et seq.,* Stat. Ann. 1942 Cum. Supp. § 27.3548 .[1] *et seq.*).    The trial court gave the Detroit Club a judgment for $5,594 and the Detroit Athletic Club a judgment for $59,920.14 as being the agreed amounts of the discounts withheld during that period.

The court of claims act (Act No. 135, Pub. Acts 1939) was amended by Act No. 137, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 13862–11a, Stat. Ann. 1942 Cum. Supp. § 27.3548 [11½]), and this amendment added a section designated 11a, which reads in part as follows:

"No claim shall be maintained against the State unless the claimant shall, within 1 year after such claim shall have accrued, file in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the State or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained.

    *    *    *

"Provided, That claim or notice of intention of filing any claim which has accrued prior to the effective date of this amendatory act may be filed within 1 year after the effective date thereof."

It is to be noted that under this amendment a claimant whose claim had accrued prior to January 10, 1942, the effective date of the amendment, was allowed one year, or until January 10, 1943, to file such claim or written notice of intention to file a claim.    In the instant case neither plaintiff filed such a claim or written notice thereof within the year; and it is obvious that at this point plaintiffs had

failed to comply with the provisions of the statute and barred portions of their claims could not have been allowed by the court of claims. This is particularly true because on April 19, 1943, in each case an answer was filed and this defense pleaded, so that the cases were then at issue.

However, by Act No. 237, Pub. Acts 1943, effective July 30, 1943, the legislature again amended the court of claims act and to section 11a of Act No. 137, Pub. Acts 1941, the following was added:

"Provided, however, That in all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of. action." (Comp. Laws Supp. 1943, § 13862–11a, Stat. Ann. 1943 Cum. Supp. § 27.3548 [11½]).

In accordance with article 5, § 21, of the State Constitution (1908), the entire body of 11a was re-enacted with the above-quoted portion being the only new amendment or change in this section. It is the plaintiffs' claim that by the re-enactment of the words "Provided, That claim or notice of intention of filing any claim which has accrued prior to the effective date of this amendatory act may be filed within 1 year after the effective date thereof" (Act No. 137, Pub. Acts 1941), the legislature intended to recreate another one-year period extending to July 30, 1944, within which any claims (including plaintiffs') which had accrued prior to July 30, 1943, might be filed. If this is true, as the trial court held, then the plaintiffs are entitled to their judgments. Defendants deny the above contention of plaintiffs, but concede that even though the time is not so extended plaintiffs are entitled to recover part of their

respective claims. Defendants' concession is that recovery by the Detroit Athletic Club should be only for discounts incident to payments made between February 23, 1942 (one year prior to its notice), and November 28, 1942 (last date discount was withheld), amounting to $4,332.80; and the Detroit Club should recover only for discounts incident to payments made between March 1, 1942 (one year prior to its notice), and November 18, 1942 (last date discount was withheld), amounting to $1,772.30.

Consideration of the court of claims act and its amendments leads to the conclusion that the time for filing these claims was not extended by the 1943 amendment. The court of claims act is in derogation of the common law, and statutes creating it and to some extent relinquishing sovereign immunity must be strictly construed. *Manion* v. *State Highway Commissioner*, 303 Mich. 1, 19. By this act the *privilege* of suing the State was granted to persons claiming injury but without creating any vested right of suit in the claimant. The legislature may at any time broaden or restrict its provisions, or even repeal the entire act. Section 11a of the 1941 amendment was a new provision obviously establishing a procedure which those who exercise their privilege under the act must follow. It is not inconsistent that the act should provide for a three-year limitation on bringing suits and at the same time require that notice of intention to make claim be given within 1 year of the accrual of the cause of action. While it is true that under certain circumstances section 11a may operate as a limitation, yet the State, in voluntarily giving up a defense which it had at common law, could properly restrict the permissive action by a requirement that the State have notice of such claim within a prescribed time limit. The title of the act is sufficiently broad to cover such procedural

requirements, the provision being germane to the subject matter of the act.

The 1943 amendments to the act granted an additional privilege to claimants in that it, by section 24, waives its immunity from liability for the torts of its officers and employees, a waiver not contained in the original act or in the 1941 amendment. By the 1943 amendment permitting tort actions, the legislature as to such actions shortened the one-year period for notice of such claims to a six-months period, which is obviously a limiting rather than a broadening provision. Had the legislature intended to revive other actions which were, on July 30, 1944, barred by failure of claimants to comply with the procedure as provided in the 1941 amendment, it could have readily done so by appropriate language. There is no indication that the legislature intended to give such a broadening effect to the 1943 amendment. Instead the contrary intent appears from the above-noted restriction.

The well-settled rules of statutory construction are stated in *Wade* v. *Farrell*, 270 Mich. 562, which cited with approval 25 R. C. L. p. 907, viz:

"When a statute continues a former statute law, that law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws. Where an act is amended 'so as to read as follows' the part of the original act which remains unchanged is considered as having continued in force as the law from the time of its original enactment and the new portion as having become the law only at the time of the amendment."

Under this rule, the first proviso in section 11a dates from the effective date of the 1941 amendment and the second proviso dates from the effective date

of the 1943 amendment. See footnote.* There being no indication to the contrary, the legislature must be presumed to have been mindful of the quoted rule and to have intended the amendments to be so construed. This rule must be followed unless it appears that the legislature intended otherwise.

Plaintiffs urge that the case of *Stebbins* v. *State Board of Pharmacy*, 297 Mich. 676, is authority for their contention that the re-enactment by amendment carries forward a time-limitation period. While it is true that in the *Stebbins Case* the same words appearing in the original act were carried forward in the amendment, and we held that the period of time involved was controlled by the amendment, the holding did not do violence to the rule as enunciated in the *Wade Case*. The basic rule in the *Stebbins Case* is that the *intent* of the legislature controls the interpretation of the statute and although the end result differs, yet the same rule may be and is applied here. If, as noted of the *Wade Case* in the *Stebbins Decision*, vested rights are involved, even the legislature may not deprive the individual of those rights. If however, as in the instant case, vested rights are not involved, decision is controlled by ascertainment of the legislative intent.

The defendants argue that the payments involved were voluntarily made and hence may not be now recovered. The defendant liquor control commission was the only source through which plaintiffs could purchase the liquor requisite to carrying on

---

* The provisos in section 11a read: "Provided, That claim or notice of intention of filing any claim which has accrued prior to the effective date of this amendatory act may be filed within 1 year after the effective date thereof: Provided, however, That in all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action."

the business for which they had purchased licenses from the State. The commission wrongfully coerced the plaintiffs into paying a price for liquor purchased without allowing a discount to which they were entitled. See *Detroit Athletic Club* v. *Liquor Control Commission, supra; City of Saginaw* v. *Consumers Power Co.,* 304 Mich. 491. For the reason that the commission wrongfully denied the discounts to the plaintiffs, and under the particular situation disclosed by this record, the plaintiffs, having paid under duress sums which they should not have been required to pay, are entitled to recover insofar as they may by having filed a timely claim in the court of claims. But plaintiffs may not recover for items as to which they did not timely give the required statutory notice.

In the brief of the Detroit Athletic Club the position is taken that (1) the notice of claim required by the statute was waived by refusal of defendant commission to allow the discounts, and (2) the notice period was arrested by bringing in the Supreme Court "a kindred action" (*Detroit Athletic Club* v. *Liquor Control Commission, supra*) within the notice period. Neither position is tenable, and the trial court so held. To hold otherwise would in practical effect nullify the statutory provision for notice. It was the refusal to allow discounts on the purchase price that gave rise to the right of action; and the required notice is not only to the commission but by section 11a is also to the attorney general, and to be filed in the court of claims. The liquor control commission was without power to waive the required statutory notice. *Mead* v. *Michigan Public Service Commission,* 303 Mich. 168; *McNair* v. *State Highway Department,* 305 Mich. 181. Nor was running of the notice period arrested by bringing a mandamus suit in the Supreme Court which neither by stat-

ute nor otherwise has original jurisdiction to entertain the instant suits. Exclusive original jurisdiction of these cases is in the court of claims; and prosecution of claims in that court is dependent upon compliance with the conditions precedent imposed by the statute granting the right to sue.

Since the foregoing was written Mr. Justice WIEST has submitted an opinion affirming the judgment entered in the trial court. In so doing my Brother seems to rely solely upon *People* v. *Lowell,* 250 Mich. 349. The inapplicability of our decision in the *Lowell Case* to the instant case plainly appears upon noting the difference between the statutory amendment under consideration in the *Lowell Case* and the statutory amendment in the instant case. Our decision in the former case involved the amendment of Act No. 338, Pub. Acts 1917, as embodied in Act No. 114, Pub. Acts 1929. The 1929 legislature in amending the earlier act entirely omitted from the amendment the pertinent words of the 1917 act—*i.e.,* the words fixing the penalty provided for violation of the law. Therefore it was held in the *Lowell Case* that by entirely omitting the words of the 1917 act when passing the 1929 amendment, the legislature intended to and did repeal the omitted portion. This is not the situation at all in the instant case. Instead when the legislature passed the amended act now under consideration (Act No. 237, Pub. Acts 1943) the identical words of the earlier act (Act No. 137, Pub. Acts 1941), so far as here pertinent, were continued in the 1943 amended act. It is difficult to conceive of any reason for the legislature having done this except the purpose was to perpetuate in the act the 1941 provision thus embodied in the 1943 act; and under the authorities cited earlier in this opinion the amended act of 1943 should be so construed as to the type of claims for which plaintiffs seek recovery.

" 'An amendment to a statute will generally be considered as a part of original act and the entire act as amended be given the construction which would be given it if the amendment were a part of the original act. *People, ex rel. Attorney General,* v. *Railroad Co.* (syllabus), 145 Mich. 140.' " *Perry* v. *Hogarth,* 261 Mich. 526.

In *People, ex rel. Parsons,* v. *Wayne Circuit Judge,* 37 Mich. 287, Justice Cooley speaking for the Court plainly pointed out that the final test of proper construction of a statutory provision is the determination of the intent of the legislature. In the instant case it is difficult to conceive that the intent of the legislature was to revive actions which were plainly barred by the provision in the 1941 amendment. Instead in carrying the proviso of the 1941 amendment literally into the 1943 amendment, the reasonable construction must be that the intent of the legislature was to continue the limitation or the bar of the 1941 amendment.

Under defendants' concession hereinbefore noted, the Detroit Athletic Club should have judgment for $4,332.80, and the Detroit Club for $1,772.30. The cases should be remanded to the court of claims with direction to vacate the judgments entered and to enter judgments in accordance with this opinion. Neither party having fully prevailed on this appeal, no costs should be allowed in this Court.

Starr and Butzel, JJ., concurred with North, C. J.

Wiest, J. The judgments should be affirmed.

The provisions carried over from the old act operate wholly under the new act and not the old one. The act of 1943 speaks too plain to admit of judicial

construction. It specifically lifted the time element in the former act by the proviso:

"That claim or notice of intention of filing any claim which has accrued prior to the effective date of this amendatory act may be filed within one year after the effective date thereof."

It is true the same proviso was in the former act, but we are confined to consideration of the act as it now stands and its operative effect upon the claims at bar.

The effective date of the act was July 30, 1943, and the accrued claims were timely presented and judgments thereon properly rendered. The applicable rule of law in the premises was settled by this court in *People* v. *Lowell,* 250 Mich. 349. We there said:

"An amendatory act has a repealing force, by the mechanics of legislation, different from that of an independent statute. Repugnancy is not the essential element of implied repeal of specifically amended sections. The rule is:

" 'Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there.' 25 R. C. L. p. 907. * * *

"The provisions carried over have their force from the new act, not from the former. 1 Lewis' Sutherland Statutory Construction (2d Ed.), § 237.

"It is plain from the authorities in this State and elsewhere that the effect of an act amending a specific section of a former act, in the absence of a saving clause, is to strike the former section from the law, obliterate it entirely and substitute the new section in its place. This effect is not an arbitrary rule adopted by the courts. It is the natural and logical effect of an amendment 'to read as follows.' It accomplishes precisely what the words import. Any

other construction would do violence to the plain language of the legislature. * * *

"Nowhere in the act did the legislature, by words or in the manner provided by any rule of construction, express an intention to save the prosecution of former offenses. On the contrary, both by the natural meaning of the language used and in accordance with the acknowledged and long-established rules with which it was presumably familiar, it affirmatively and appropriately expressed an intention to obliterate the amended section. A contrary conclusion is private speculation, not judicial construction.

"'The result may or may not be conformable to the actual intent of those who passed the latter statute. We can only ascertain the legal intent of the legislature, by the language which they have used, applied and expounded conformably to the settled and well-known rules of construction.' *Commonwealth* v. *Kimball,* 21 Pick. (38 Mass.) 373.

"'Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it.' Black on Interpretation of Laws, p. 36. * * *

"At bottom, the argument against repeal is sociological rather than legal, that the effect of repeal will be injurious to the public welfare, in excusing offenders from punishment, and that such 'mischievous and absurd consequences' justify this court in saving the prior penalties by construction. The argument is temptingly forceful, and if Act No. 114 [Pub. Acts 1929] were ambiguous, its meaning being sought, and more than one construction of its language reasonable, it would be persuasive. However Act No. 114 is construed, whether prospective, retroactive, or both, its effect of repeal on amended sections is the same, because, on a day certain, by the language of the law, they were abrogated and new

sections 'to read as follows' were substituted for them.

"No reason can be urged against the rule itself. If observed in making laws, it certainly and accurately expresses the will of the legislature according to the natural meaning of the words used. No principle of sociology would warrant the abrogation of a rule upon which legislation has been enacted and construed since the establishment of the State, because, in a single or a few instances, misfortune follows, not its observance, but its disregard. Nor can it confer upon the court legislative power to correct mistakes in unambiguous laws.    *    *    *

"Nor, upon the grounds of ultimate public good, as distinguished from the immediate consequences, is the sociological argument entirely without answer. There are such offsetting considerations as the overruling of a long line of decisions of this court, upon which personal and property rights have been established; the abrogation of a certain and reasonable rule of statutory construction which accurately mirrors the language of the legislature; the substitution for it of an uncertain or no rule, with confusing effect; the encouragement of carelessness in lawmaking, with the idea that this court will legislate virtue into or evil out of the law as enacted by the legislature; and, of the first importance, the departure of the court from its constitutional judicial function to usurp legislative power by supplying a saving clause which the legislature has purposely or inadvertently omitted."

The opinion of the court, written by Mr. Justice FEAD and concurred in by Mr. Justice NORTH, is a scholarly exposition and can be read with profit.

The judgments are affirmed, with costs to plaintiffs.

SHARPE, BOYLES, and REID, JJ., concurred with WIEST, J. BUSHNELL, J., did not sit.