*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT MONROE,

        Plaintiff-Appellant,

v

ST. JOSEPH MERCY HOSPITAL, PONTIAC,
TRINITY HEALTH-MICHIGAN d/b/a ST. JOSEPH
MERCY HOSPITAL, PONTIAC,

        Defendants-Appellees,

SELECT SPECIALTY HOSPITAL PONTIAC, INC,

        Defendant.

UNPUBLISHED
March 21, 2025
9:19 AM

No. 368667
Oakland Circuit Court
LC No. 2022-196478-NH

Before: MALDONADO, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff appeals by right the trial court's order granting
the motion for summary disposition brought by defendants St. Joseph Mercy Hospital and Pontiac
Trinity Health-Michigan pursuant to MCR 2.116(C)(8) (failure to state a claim).[1] We affirm.

## I. BACKGROUND FACTS

According to his complaint filed on October 3, 2022, plaintiff presented to the emergency
room at defendants' hospital on May 3, 2020 with generalized weakness that had persisted for a
week, during which time his blood pressure was low and he was feeling sleepy. Plaintiff was
diagnosed as likely suffering from COVID-19 and was admitted to the hospital. In the days

---

[1] The claims against defendant Select Specialty Hospital Pontiac, Inc. were dismissed by
stipulation on September 21, 2023, so it is not a party to this appeal. Thus, all references to
"defendants" refer to St. Joseph Mercy Hospital and Pontiac Trinity Health-Michigan.

following his admission, he was subsequently assessed as having multiple decubitus ulcers (pressure ulcers), which he alleged were caused by the medical negligence of defendant's nurses and other staff members, including their failure to reposition him at least every two hours, failure to provide nutrition that would have promoted healing, and other acts and omissions.[2] As a result of defendant's alleged negligence, plaintiff claimed to have suffered grade IV pressure ulcers that became necrotic and required extensive treatment.

In their answer to the complaint, filed on November 10, 2022, defendants argued that governmental immunity was imputed to it, as set forth within Executive Order 2020-30, and thus the action was barred pursuant to MCR 2.116(C)(7).

Approximately 10 months after filing their answer to the complaint in this matter, defendants moved for summary disposition, alleging that they were immune from the liability alleged by plaintiff, pursuant MCR 2.116(C)(7) and MCR 2.116(C)(10), and the Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471, *et seq*. The motion was granted by the trial court on October 30, 2023, pursuant to MCR 2.116(C)(8), holding that plaintiff failed to state a claim upon which relief could be granted and that amendment to his complaint would not be justified. This appeal followed.

Plaintiff argues the trial court erred in concluding that defendants were immune from liability under MCL 691.1475. We disagree.

## II. STANDARD OF REVIEW

A trial court's decision to grant a motion for summary disposition is reviewed de novo, which means that we review a legal issue without according deference to the trial court's decision in that regard. *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022); *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022).

## III. ANALYSIS

### A. EXECUTIVE ORDERS AND THE PHCIA

#### 1. EXECUTIVE ORDER REGARDING COVID-19 AND THE PHCIA

On March 10, 2020, in response to the COVID-19 pandemic, Governor Gretchen Whitmer issued Executive Order 2020-4, declaring a statewide emergency pursuant to the Emergency Powers of the Governor Act of 1945 (EPGA), MCL 10.31, *et seq*., and pursuant to the Emergency

---

[2] Decubitus ulcers, which are also known as bed sores, pressure injuries, or pressure ulcers are injuries to the skin and the tissue below the skin resulting from pressure on the skin for a long time. See Mayo Clinic, *Diseases & Conditions: Bedsores* <https://www.mayoclinic.org/diseases-conditions/bed-sores/symptoms-causes/syc-20355893> (accessed February 21, 2025).

Management Act (EMS), MCL 30.401, *et seq.*[3]  On March 29, 2020, Governor Whitmer issued Executive Order 2020-30, which included the following provision:

> Consistent with MCL 30.411(4), any licensed health care professional or designated health care facility that provides medical services in support of this state's response to the COVID-19 pandemic is not liable for an injury sustained by a person by reason of those services, regardless of how or under what circumstances or by what cause those injuries are sustained, unless it is established that such injury or death was caused by the gross negligence, as defined in MCL 30.411(9), of such health care professional or designated health care facility.

On April 30, 2020, Governor Whitmer issued additional executive orders that essentially redeclared the previously declared state of emergency pursuant to the EMA and the EPGA. (https://www.michigan.gov/whitmer/news/state-orders-and-directives/2020/03/30/executive-order-2020-30).

On October 2, 2020, the Michigan Supreme Court issued *In re Certified Questions*, 506 Mich 332; 958 NW2d 1 (2020), in which it held that the Governor did not possess the authority under the EMA to renew her declaration of a state of emergency or disaster based on COVID-19 after April 30, 2020.  The Court further held that the EPGA violated Michigan's Constitution because it purported to delegate to the executive branch the legislative powers of state government and to allow the exercise of such powers indefinitely; consequently, the EPGA could not continue to provide a basis for the Governor to exercise emergency powers.

Later that month, the PHCIA was enacted, effective October 22, 2020, which included the following provisions:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility. [MCL 691.1475(5)].

As well as:

> The liability protection provided by this act applies retroactively, and applies on or after March 29, 2020 and before July 14, 2020.  [MCL 691.1477]

---

[3] Governor Whitmer also subsequently declared a state of disaster pursuant to the EMA. (https://www.michigan.gov/whitmer/news/state-orders-and-directives/2020/03/30/executive-directive-2020-4).

## B. APPLICATION OF THE PHCIA TO THE PRESENT CASE

### 1. LIABILITY FOR HEALTH CARE SERVICES IN SUPPORT OF THIS STATE'S RESPONSE TO THE COVID-19 PANDEMIC

Plaintiff's first argument on appeal is that the PHCIA does not apply to him because he was not injured by reason of health care services provided to him in support of the state's response to the COVID-19 pandemic and the injuries were not sustained by reasons of treatment for COVID-19. More specifically, plaintiff argues that the treatment he received, which led to the development of pressure ulcers, was not treatment for COVID-19, which was a novel disease for which specific treatments were provided around the time of the incident. Rather, plaintiff argues, the treatment that he received (or the lack thereof) that led to the development of stage IV pressure ulcers was the same type of treatment that hospitals had employed for wound care for many years prior to the pandemic, which is the turning, repositioning, and offloading of patients to prevent pressure ulcers for those at risk of developing such wounds. Additionally, plaintiff's wounds were not sustained as a result of healthcare services rendered to combat COVID-19, such as a laryngotracheal injury resulting from hasty intubation, pulmonary deconditioning, or other well-known complications from COVID-19 treatment.

Subsequent to the filing of the briefs in this matter, this Court issued multiple opinions relevant to the issues raised by plaintiff in this case, the most recent of which contained facts that are indistinguishable from the present case. In *Harris v Rhema-Belmont Operating, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2025 (Docket Nos. 366510 and 367678), the plaintiff was alleged to have suffered pressure ulcers as a result of medical malpractice at the defendant's hospital, but this Court ruled that the defendant hospital was entitled to summary disposition pursuant to the PHCIA.[4] In that case, we cited to two recent published cases pertaining to the PHCIA, *Skipper-Baines v Bd of Hosp Managers for the City of Flint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365137) and *Warren v McLaren Flint*, ___ Mich App ___, ___ ; ___ NW3d ___ (2024) (Docket No. 366226).

In *Warren*, the plaintiff suffered from pressure ulcers at the defendant's hospital after being intubated for COVID-19. As this Court noted in *Harris*, "This Court construed 'health care services in support of this state's COVID-19 pandemic' as used in § 5 to encompass 'healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic, [including services provided] to those infected with COVID-19 and regular healthcare services provided during the statutory period.' " *Harris*, unpub op at 6 (citation omitted). The *Warren* Court held that the pressure ulcers were sustained by reason of the healthcare services provided by the defendant in support of the state of Michigan's response to the pandemic and, as a result, defendant was immune from liability pursuant to the PHCIA. *Warren*, ___ Mich App at ___; slip op at 9-10.

In *Skipper-Baines*, ___Mich App ___; slip op at 4, this Court found that, although immunity under the PHCIA is not limited to treatment provided to a patient to treat COVID-19

---

[4] Although unpublished opinions are not binding authority, they may be persuasive. MCR 7.215(C)(1); *People v Kloosterman*, 296 Mich App 636, 641 n 2; 823 NW2d 134 (2012).

directly, some connection must exist between the pandemic and the medical services giving rise to the cause of action.

In *Harris*, the plaintiff tested positive for COVID-19 when she arrived at the defendant's emergency department. *Harris*, unpub op at 2. While being treated for COVID-19 related pneumonia, as well as other conditions, she developed pressure ulcers. *Id*. We held that, "[a]lthough her wound care was not directly in response to her COVID-19 diagnosis, a connection exist[ed] between the care provided to Harris, which allegedly led to her developing pressure ulcers, and the pandemic." *Id*. at 7. "MCL 691.1475 applies to the healthcare services that defendant provided to Harris, and defendants therefore are entitled to immunity under § 5 unless an exception to immunity applies." *Id*.

In the present case, plaintiff was admitted to defendants' hospital with a diagnosis of COVID-19 and was exhibiting symptoms of COVID-19. Just as the plaintiff in *Harris*, here, plaintiff allegedly developed pressure ulcers subsequent to admission as a result of the defendant's neglect. Like the plaintiff in *Harris*, plaintiff's wound care in the present case was not directly related to his probable COVID-19 diagnosis. But just as a connection existed between the pressure ulcers caused by the alleged lack of care the plaintiff in *Harris* received and the pandemic, a connection likewise exists between the pressure ulcers caused by the alleged lack of care that plaintiff received in the present case and the pandemic. As such, the defendants who provided those healthcare services to plaintiff are entitled to immunity unless an exception to immunity applies. Because plaintiff never claimed that an exception to immunity was applicable (such as gross negligence or willful and wanton conduct), the trial court properly concluded that defendants were entitled to immunity in this case.

## 2. THE PHCIA AND NEGLIGENT OMISSIONS

Plaintiff's second argument is that his injuries were caused by the negligent omissions of defendants, i.e., neglect, as opposed to the actions of defendants, and that negligent omissions are not covered under the immunity provided by the PHCIA. However, once again, plaintiff's brief was submitted in this matter prior to this Court's decision in *Warren* where the plaintiff likewise was alleged to have suffered from pressure sores caused by the acts and omissions of the defendant, including a list of actions that the defendant allegedly failed to perform like repositioning the plaintiff to prevent development of wounds. *Warren*, ___ Mich App ___; slip op at 2. In *Harris*, we relied upon *Skipper Baines* and *Warren*, holding that when a patient admitted to the hospital for COVID-19 treatment allegedly develops pressure sores from medical negligence, including allegations of negligent omissions, a sufficient connection existed between the care provided and the pandemic, such that the defendant hospital was immune from liability pursuant to the PHCIA (absent an exception to immunity). *Harris*, unpub op at 6-7. Because this case presents nearly identical facts, we once again rely upon *Warren* and *Skipper Baines* (as described above) and hold that defendant is immune from liability for its alleged omissions in this case, pursuant to the same statute.

C.  RETROACTIVITY OF THE PHCIA

Plaintiff's final argument on appeal is that retroactive application of the PHCIA, which was enacted in October of 2020, to the present case arising out of injuries plaintiff alleges to have suffered in May of 2020, would violate Michigan's Constitution.

Both parties in this matter argue that the issue of the retroactivity of the PHCIA must be decided pursuant to the Michigan Supreme Court's four-rule analysis in *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26; 852 NW2d 78 (2014).  However, as explained below, only the first rule of the *LaFontaine* analysis is applicable to this matter because the PHCIA explicitly stated that it was to be given retroactive application.

1.  STATUTORY CONSTRUCTION USING THE FOUR RULES

In 1982, the U.S. Circuit Court of Appeals for the Sixth Circuit certified three questions to the Michigan Supreme Court, the first two of which involved statutory construction of the Michigan products liability statute, MCL 600.2945, *et seq.*, including the issue of whether a plaintiff could be determined to be comparatively negligent in a claim alleging injury by breach of an implied warranty and the issue of whether the statute was to be given prospective or retroactive effect.[5]  *In re Certified Questions from the United States Court of Appeals for the Sixth Circuit*, 416 Mich 558; 331 NW2d 456 (1982).[6]  Assuming the Michigan Supreme Court construed the statute to apply retroactively, the third question asked whether such a retroactive statute would violate the Due Process Clause (Art 1, § 17) of the Michigan Constitution.  In answer to question one, the Court found that comparative negligence principles applied to an implied warranty claim under the new statute.  In response to the issue regarding retroactivity, the Court said that four rules must be considered in determining whether a new statute applied to a pre-enactment cause of action.  *Id*. at 570-571.

> First, is there specific language in the new act which states that it should be given retrospective or prospective application. Second, a statute is not regarded as operating retrospectively solely because it relates to an antecedent event.  Third, a retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past.  Fourth, a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute.  [*Id*. at 570-571 (quotation marks, alterations, and citations omitted).]

---

[5] We note that the product liability statute, MCL 600.2945 *et seq.*, was subsequently amended, effective March 28, 1996.

[6] This is the second case cited in this opinion with a name that begins with "*In re Certified Questions*." To avoid confusion, we note that all subsequent references to *In re Certified Questions* are to this case.

The Court then explained the history behind the rules for construing a statute as having prospective application. "The general rule against retrospective application has been applied in cases where a new statute abolishes an existing cause of action. It is clear that once a cause of action accrues,—i.e., all the facts become operative and are known—it becomes a 'vested right.' " *Id*. at 573, citing *Connelly v Paul Ruddy's Equip Repair & Serv Co*, 388 Mich 146, 150-152; 200 NW2d 70 (1972), and *Devlin v Morse*, 254 Mich 113, 115; 235 NW 812 (1931). The court noted that a new statute that abolishes an existing cause of action brings the statute within the general proscription of rule three. *In re Certified Questions*, 416 Mich at 573.

More recently, the Michigan Supreme Court revisited this issue in *LaFontaine*, noting that "[r]etroactive application of legislation presents problems of unfairness because it can deprive citizens of legitimate expectations and upset settled transactions. We have therefore required that the Legislature make its intentions clear when it seeks to pass a law with retroactive effect." *LaFontaine*, 496 Mich at 38 (quotation marks and citations omitted). In determining whether a law has retroactive effect, the Court reaffirmed its four-principle analysis from *In re Certified Questions*. *Id*. at 38-39.

Plaintiff in the present case suggests that we should rely upon the above principles to determine that his right to bring a medical malpractice claim vested prior to the enactment of the PHCIA and, therefore, we must hold that the PHCIA cannot apply retroactively to his claim. However, plaintiff's argument appears to confuse the four-rule analysis from *LaFontaine* and *In re Certified Questions*, which is an issue of statutory construction, with the issue of constitutionality. The issue before the Court in *In re Certified Questions* and *LaFontaine* was whether those respective statutes should be *construed* to give retroactive effect. The Court said the first rule requires determining whether there is specific language in the new act stating that it should be given retrospective or prospective application. In the present case, § 7 of the statute says: "[t]he liability protection provided by this act applies retroactively, and applies on or after March 29, 2020 and before July 14, 2020." That language indicating that the statute was to be given retroactive effect could not be any clearer. As a result, there is no reason to address the remaining rules in the *LaFontaine* four-rule analysis, i.e., because the statute cannot be construed to be given only prospective effect.

Some confusion regarding this issue may have arisen from this Court's decision in *Doe v Dep't of Corrections*, 249 Mich 49, 60; 641 NW2d 269 (2001), where two of the three panel members construed an amendment to the Persons with Disabilities Civil Rights Act (PWDCRA) to suggest that it was intended to be given retroactive effect. However, application of rules three and four compelled the Court to conclude it would be improper to apply the new statute retroactively. A concurrence was filed in which one member of the Court opined that there was insufficient evidence supporting the argument that the Legislature actually intended the amendment to be applied retroactively. The difference between the present case and *Doe* is that there was no explicit language in *Doe* indicating that the subject statute in that case applied prospectively or retroactively. Rather, the *Doe* court opined that the statute suggested retroactively, and then considered the other three rules to ultimately decide how to construe the statute. Here, as noted above, there is no question that the PHCIA specifically indicated that it was to be given retroactive effect.

## 2. DOES THE PHCIA VIOLATE THE MICHIGAN CONSTITUTION?

Plaintiff alleges that the retroactive nature of § 7 of the PHCIA violates Const 1963, art 1 § 17, which says: "No person shall be . . . deprived of life, liberty, or property, without due process of law."

Some of the cases relied upon by defendant for his due process argument are clearly inapplicable to this matter. For example, plaintiff relies upon *LaFontaine*, despite the fact that *LaFontaine* did not address the issue of whether the statute at issue in that case passed constitutional muster; rather, as described above, the Court in *LaFontaine* merely analyzed whether the statute at issue in that case should be construed to give it retroactive effect. Plaintiff also relies upon *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Bd of Trustees v City of Pontiac*, 317 Mich App 570; 895 NW2d 206 (2016), where this Court addressed the issue of whether a city manager's executive order should be construed to give retroactive effect pursuant to *LaFontaine* and *In re Certified Questions*, which is also not a case addressing the constitutionality of a statute. Finally, plaintiff cites to *Ohio Farmers Inc Co v Shamie*, 243 Mich App 232; 622 NW2d 85 (2000), a case where this Court did not apply a newly enacted statute of limitations retroactively to a previously accrued claim; however, yet again, the statute in that case did not explicitly state that it was to be given retroactive effect, meaning this Court was tasked with resolving an issue of statutory construction, not an issue of constitutionality.

Plaintiff also relies upon this Court's opinion in *Andary v USAA Cas Co*, 343 Mich App 1; 996 NW2d 784 (2022), regarding the 2019 amendments to Michigan's no-fault insurance act. But that case was subsequently affirmed in part and reversed in part by the Michigan Supreme Court in *Andary v USAA Cas Co*, 512 Mich 207; 1 NW2d 186 (2023). The Supreme Court in *Andary* construed the 2019 amendments to MCL 500.3157(7) (fee schedules) and (10) (attendant care limitations) as not applying retroactively to the individual plaintiff's claims for personal protection insurance (PIP) benefits where their respective rights to those benefits vested prior to enactment of the amendments in 2019. Here, plaintiff relies on a portion of this Court's opinion in *Andary* in which we said that, even if we concluded the Legislature intended certain changes to Michigan's no-fault insurance act to apply retroactively, we would find that retroactive application violates the Contracts Clause of the Michigan Constitution. *Andary*, 343 Mich App at 24. But the Michigan Supreme Court vacated that section of this Court's opinion, i.e., the section that addressed whether retroactive application of the statute violated the Contracts Clause of the Michigan Constitution, deeming it unnecessary to be decided because the Court construed the statute to be applied prospectively. *Andary*, 512 Mich at 257 n 30.[7] The Supreme Court's decision

---

[7] While the Supreme Court in *Andary* did not address the issue of whether retroactive application of amendments to Michigan's no-fault insurance act would have violated the Contracts Clause of the Michigan Constitution as it pertained to individual plaintiffs who had purchased insurance policies prior to those amendments, the Court did address constitutional challenges to the amendments that were raised by another plaintiff, a medical provider, which had brought a claim on its own behalf for payment of services provided for medical expenses arising out of a motor vehicle accident. The Court held that the provider's due process and equal protection claims failed as a matter of law. *Andary*, 512 Mich at 271.

to apply MCL 500.3157(7) and (1) prospectively, as to the individual defendants, specifically relied upon the fact that the Legislature did not clearly state that it intended those amended provisions to apply retroactively. *Id*. at 256.

Defendant also cites to *Grubaugh v St Johns*, 384 Mich 165, 170; 180 NW2d 778 (1970), for the proposition that due process extends to protect that property construed to be a vested right and that an accrued right of action is a vested right. However, *Grubaugh* was abrogated by the Michigan Supreme Court in *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; 731 NW2d 41 (2007), and plaintiff fails to present any argument as to what portions of *Grubaugh*, if any, remain good law.

Ultimately, plaintiff's argument regarding the alleged constitutional violation amounts to little more than a cursory statement that the retroactivity of the statute violates his right to due process. He provides no argument as to what level of scrutiny this Court should apply when analyzing the constitutionality of the statute. He does not allege that a recognized fundamental right has been violated (which would require strict scrutiny analysis) nor does he argue that the retroactive language contained in § 7 of the PHCIA is not rationally related to a legitimate governmental purpose (i.e., requiring rational-basis review).[8] We note that "[i]nsufficiently briefed issues are deemed abandoned on appeal." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). As a result, we find that the issue of whether or not the PHCIA violates the Due Process Clause of the Michigan Constitution due to its expressly retroactive effect has been abandoned on appeal by plaintiff.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Anica Letica
/s/ Randy J. Wallace

---

[8] In his brief, plaintiff vaguely cites to *Downriver Plaza Group v City of Southgate*, 444 Mich 656; 513 NW2d 807 (1994), which involved the issue of whether a city's retroactive validation of user charges was consistent with constitutional due process, but again, the brief provides no analysis as to how that case is applicable here.